**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SEMAJ WORRELL,** | : | **Civil Action No.** |
| **300 Parker Avenue** | : | |
| **Apartment 108** | : | |
| **Philadelphia, PA 19128** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **TRUE FOOD KITCHEN,** | : | |
| **239 Mall Boulevard** | : | |
| **King of Prussia, PA 19406** | : | |
| | : | |
| **4455 E Camelback Road** | : | |
| **Suite A-115** | : | |
| **Phoenix, AZ 85018** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Semaj Worrell (hereinafter "Plaintiff"), by and through his attorney, Koller Law,

LLC, bring this civil matter against True Food Kitchen (hereinafter "Defendant"), for violations

of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act ("PHRA").  In

support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, True Food Kitchen is a relaxed, eco-chic chain of restaurants

with a location at 239 Mall Boulevard, King of Prussia, PA 19406 and with a corporate

headquarters located at 4455 E Camelback Road, Suite A-115, Phoenix, AZ 85015.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and
employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's
employment.  In making said decisions, these individuals engaged in the pattern and
practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the
instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and
employees who acted directly or indirectly in the interest of the employer.  In so acting,
these individuals engaged in the pattern and practice of discriminatory treatment, which
forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the
Defendant's contacts with this state and this judicial district are sufficient for the exercise
of jurisdiction and comply with traditional notions of fair play and substantial justice, thus
satisfying the standard set forth by the United States Supreme Court in International Shoe
Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant
to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States
and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein
pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§

1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial

district, the Defendants is located in this judicial district and because all of the acts and/or

omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII and PHRA.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal

Employment Opportunity Commission ("EEOC") alleging race discrimination and

retaliation against Defendant.

14. The Complaint was assigned a Charge Number 530-2020-03748 and was dual filed with

the Pennsylvania Human Relations Commission.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to

the Charge and that Notice is dated July 12, 2021. Plaintiff received the notice by electronic

mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a

lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to

Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is an African-American male.

21. On or around June 20, 2019, Defendant hired Plaintiff in the position of Server at its King of Prussia location.

22. Plaintiff was well qualified for his position and performed well.

### PLAINTIFF WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT BASED UPON HIS RACE

23. Throughout Plaintiff's employment, he was subjected to a hostile work environment based on his race.

24. In particular, Alexis Smith (Caucasian), Supervisor, spoke to Plaintiff in a condescending and belittling tone on an almost daily basis.

25. Ms. Smith did not speak to non-African-American employees in this matter.

26. She also scrutinized Plaintiff's work product and hovered over his workstation.

27. Again, Ms. Smith did not treat non-African-American employees this way.

28. Moreover, Plaintiff was one of the best Servers in terms of production numbers and positive customer reviews, yet Ms. Smith treated him with disdain and contempt.

29. In addition, Nicole Janneti (Caucasian), Server, spread a false and malicious rumor that Plaintiff was selling drugs to management.

30. Plaintiff was offended by the rumor and believed it to be based upon his race.

31. When Defendant discovered that Ms. Janneti had spread the false rumor about Plaintiff, Defendant refused to discipline her.

## PLAINTIFF COMPLAINED ABOUT THE RACE DISCRIMINATION THAT HE WAS SUBJECTED TO, BUT DEFENDANT REFUSED TO PROPERLY ADDRESS IT

32. On or around January 2 or 3, 2020, Plaintiff complained to Joel Stark, General Manager, about Ms. Smith's unfair treatment and overt hostility directed at him.

33. Mr. Stark was dismissive of Plaintiff's complaint of unfair treatment.

34. Instead, Mr. Stark told Plaintiff that Ms. Smith had accused him of stealing tables.

35. This accusation was untrue and blatantly false.

36. Plaintiff was deeply offended by Ms. Smith's false accusation.

37. Plaintiff had never "stolen tables" as Ms. Smith had alleged.

38. Instead, as the scheduled closing server, Plaintiff picks up tables from other servers when the volume of customers decreases, and the other servers are "phased out" or removed from service.

## DEFENDANT RETALIATED AGAINST PLAINTIFF FOLOWING HIS COMPLAINT OF RACE DISCRIMINATION

39. On January 8, 2020, approximately one week after Plaintiff complained about Ms. Smith's unfair treatment, Plaintiff was again assigned as the closing server.

40. At approximately 8:15 pm, which his often when Defendant beings its "phasing" or removing of servers from service, Lucas Miller, Server, requested that Plaintiff take his table, which he did.

41. Given that Mr. Miller had requested that Plaintiff take his table and that the volume of customers was low, Plaintiff thought that Defendant had begun phasing for that night's shift.

42. However, Plaintiff saw Angel, another Server, who informed him that Defendant had not yet begun its phasing.

43. Shortly thereafter, Ms. Smith, who had been in the office for the prior hour, arrived at the floor.

44. Plaintiff requested clarification on phasing from Ms. Smith.

45. She became visibly irritated and accused Plaintiff of being upset, which he was not.

46. Plaintiff requested other staff on duty, such as Chef Dolla and Chef Brian to explain to Ms. Smith that he was simply requesting clarification on staffing.

47. Ms. Smith then pointed to the door while saying, "there's the door."

48. Plaintiff was shocked by her angry reaction.

49. Ms. Smith then sent Plaintiff home and told him not to return until he had spoken with Mr. Stark.

## PLAINTIFF'S SUPERVISOR SENT HIM A RACIALLY DISCRIMINATORY TEXT MESSAGE AFTER HE WAS SENT HOME FROM HIS SHIFT

50. Ms. Janneti then sent Plaintiff a text message that stated, "stay black" with a white fist emoji, and then "LOL".

51. Plaintiff was offended by Ms. Janneti's text message based upon his race.

## DEFENDANT RESCHEDULED PLAINTIFF'S MEETING, WHICH RESULTED IN HIM BEING UNABLE TO REPORT TO WORK FOR NEARLY A WEEK

52. The following day, on January 10, 2020, Plaintiff arrived for his scheduled shift to speak with Mr. Stark.

53. However, Mr. Stark left before Plaintiff could speak with him, and he was sent home and not permitted to work.

54. Plaintiff then scheduled a time to meet with Mr. Stark on Saturday, January 11, 2020.

55. However, Mr. Stark canceled the scheduled meeting and rescheduled it for Tuesday, January 14,2020.

56. At that point, Plaintiff had not worked, or received any income, in almost a week.

## PLAINTIFF REPORTED THE DISCRIMINATION THAT HE WAS SUBJECTED TO HUMAN RESOURCES

57. Accordingly, Plaintiff contacted Josh Seguin, Human Resource Representative, to complain of discrimination and that he had been sent home and removed from the schedule unfairly.

58. Thereafter, Plaintiff provided Mr. Seguin with examples of the discrimination and harassment to which he had been subjected.

## DEFENDANT REINSTATED PLAINTIFF FOLLOWING HIS MEETING WITH MR. STARK

59. On Tuesday, January 14, 2020, Plaintiff finally met with Mr. Stark.

60. After the meeting, Defendant reinstated Plaintiff.

## DEFENDANT DELAYED IN ISSUING PLAINTIFF HIS PAYCHECK

61. On Friday, January 17, 2020, Plaintiff requested his paycheck from Ms. Smith.

62. She returned from the office with checks for two other servers, but claimed that his check was not there.

63. Shortly thereafter, Mr. Stark informed Plaintiff that his check was in the office.

64. At the conclusion of Plaintiff's shift, he again asked Ms. Smith for his check.

65. This time, Ms. Smith gave Plaintiff his paycheck.

66. However, after giving Plaintiff his check she angrily glared at Plaintiff for approximately one (1) minute from across the room.

67. Plaintiff was unnerved by Ms. Smith's angry stare.

**MR. STARK MADE A DISCRIMINATORY AND INTENTIONAL HURTFUL COMMENT TO PLAINTIFF AND HE PROCEEDED TO REPORT IT TO HUMAN RESOURCES**

68. On or around January 18, 2020, while Plaintiff was clearing a table that included chopsticks and a butter knife, Mr. Stark approached Plaintiff to inquire what he was doing.

69. Plaintiff explained that he was clearing the table.

70. In response, Mr. Stark stated that maybe he would stab Plaintiff with it.

71. Mr. Stark was aware that Plaintiff had been stabbed in the past, and he made this statement with the intention of causing him emotional distress.

72. Mr. Stark did not make such statements to non-African-American staff.

73. Thereafter, Plaintiff contacted Mr. Seguin to complain about the incident.

**PLAINTIFF SUBJECTED TO SEXUAL HARASSMENT THROUGHOUT HIS EMPLOYMENT WITH DEFENDANT**

74. During Plaintiff's employment with Defendant, he also was subjected to sexual harassment by a management-level employee.

75. Ben Amerling, Regional Chef, routinely sexually harassed Plaintiff.

76. For example, Mr. Amerling would hug and grab Plaintiff from behind.

77. Plaintiff was offended by Mr. Amerling's conduct and requested that he stop.

78. On or around February 10, 2020, Mr. Amerling approached Plaintiff from behind, grabbed him around his stomach and proceeded to rub his stomach.

79. Mr. Amerling then told Plaintiff to make him a cup of coffee as sweet as him.

80. Plaintiff was grossly offended by his conducted and requested that Mr. Amerling stop.

81. On this occasion, Mr. Amerling's conduct was witnessed by other coworkers who submitted statements to Defendant regarding Mr. Amerling's harassment of Plaintiff.

82. On or around February 14, 2020, Mr. Amerling asked Plaintiff if he was going to Fox and Hound, a pub located nearby that Plaintiff frequently went to after his shift with other staff and restaurant workers in the area.

83. Plaintiff was noncommittal as he preferred that Mr. Amerling not know his plans.

84. That evening, Plaintiff arrived at Fox and Hound with a friend, a line cook at North Italia, another establishment in the area.

85. Mr. Amerling was at Fox and Hound when Plaintiff arrived, and he approached Plaintiff.

86. Throughout the night, Mr. Amerling invited Plaintiff to attend a strip club with him no less than four (4) times.

87. Each time Plaintiff declined his invitation and made it known that it was unwelcome.

88. Thereafter, Mr. Amerling sent Plaintiff a text message asking him to send a picture of himself to Mr. Amerling.

89. Plaintiff declined to do so, and he was offended by Mr. Amerling's sexual proposition.

## MS. SMITH HUMILIATED PLAINTIFF AS A WAY TO DISCRIMINATE AND RETALIATE AGAINST PLAINTIFF

90. On February 19, 2020, Ms. Smith left a document out in public view indicating that Plaintiff had failed a "secret shopper" report.

91. The "secret shopper" reports are confidential and delivered in the privacy of Defendant's office.

92. At this time, Plaintiff was one of the top performing Servers at Defendant's King of Prussia location and had outstanding customer reviews.

93. The "secret shopper" report was an anomaly.

94. However, Ms. Smith used the report to intentionally embarrass Plaintiff in front of the staff as a way to further discriminate and retaliate against him.

95. Ms. Smith did not leave "secret shopper" reports for any other employee in public view.

## PLAINTIFF COMPLAINED ABOUT SEXUAL HARASSMENT AND ONGOING DISCRIMINATION AND RETALIATION TO MANAGEMENT

96. On February 19, 2020, Plaintiff complained to Mr. Stark about the sexual harassment and ongoing discrimination and retaliation.

97. Plaintiff stated that he was so uncomfortable by the sexual harassment and ongoing discrimination that had not been properly addressed that he felt like he could not work at Defendant anymore.

98. The following day, Christina Fox, Regional Manager, pulled Plaintiff off his shift to speak with him.

99. Plaintiff requested to record the audio of his conversation with Ms. Fox, but she declined.

100. Plaintiff proceeded to discuss the incidents of sexual harassment with Mr. Amerling, and then requested that he speak with Mr. Seguin on the remaining topics including his employment status.

101. Given that his complaints had not been addressed and the discrimination had been allowed to continue at that location, Plaintiff preferred to speak directly with Human Resources on these sensitive topics.

## PLAINTIFF COMPLAINED TO HUMAN RESOURCES ABOUT THE SEXUAL HARASSMENT AND DISCRIMINATION AND WAS GIVEN A TERMINATION DATE

102. On or around February 21, 2020, Plaintiff contacted Mr. Seguin to complain about the sexual harassment and continuing discrimination.

103. Plaintiff also complained that he was being forced out even though he was a top performer at Defendant.

104. Mr. Seguin informed Plaintiff that his last day would be March 3, 2020.

105. Plaintiff did not want to resign; instead, Plaintiff wanted Defendant to stop the harassment, discrimination and unfair treatment.

106. Defendant refused to stop the harassment and discrimination, and, instead, forced Plaintiff to resign.

107. It is Plaintiff's position that he was discriminated against due to his race, subjected to a hostile work environment (sexual harassment) and retaliated against for complaining about the aforementioned harassment and discrimination in violation of Title VII and the PHRA.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

108. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

109. Plaintiff is a member of protected classes in that he is African-American.

110. Plaintiff was qualified to perform the job for which he was hired.

111. Plaintiff suffered adverse job actions, including, but not limited to termination.

112. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

113. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

114. Defendants discriminated against Plaintiff on the basis of race.

115. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

116. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

117. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

118. The foregoing conduct by Defendants constitutes unlawful discrimination against

Plaintiff on the basis of his race (African-American).

119. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages

as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## COUNT III – SEX DISCRIMINATION
## (SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT)
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

120. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

121. Plaintiff is a member of a protected class (male).

122. By the conduct set forth above of Defendant engaged in unlawful employment

discrimination.

123. Taken together, the acts outlined above constitute a hostile work environment based on

sex.

    a. Plaintiff suffered intentional discrimination because of his membership in a

       protected class – male.

    b. Such discrimination was severe, pervasive, and regular.

    c. Such discrimination detrimentally affected Plaintiff.

    d. Such discrimination would have detrimentally affect a reasonable person of the

       same protected class in Plaintiff's position.

124. The unlawful employment practices outlined above were intentional.

125. Defendant knew or should have known of the sexual harassment.

126.  Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

127. As a result of Defendants' actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

128. The above described acts of Defendants with regard to Plaintiff were egregious and were committed with a malicious, willful, and/or reckless indifference to the statutorily protected rights of Plaintiff.

129. Said acts of Defendant were committed by and through its senior management employee within his employment relationship with Defendant.

130. The extreme and outrageous acts of Defendants merit the imposition of punitive damages.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IV – SEX DISCRIMINATION
### (SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT)
### PENNSYLVANIA HUMAN RELATIONS ACT

131. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

132. Plaintiff is a member of a protected class (male).

133. By the conduct set forth above of Defendant engaged in unlawful employment discrimination.

134. Taken together, the acts outlined above constitute a hostile work environment based on sex.

  e.   Plaintiff suffered intentional discrimination because of her membership in a protected class – male.

  f.   Such discrimination was severe, pervasive, and regular.

  g.   Such discrimination detrimentally affected Plaintiff.

  h.   Such discrimination would have detrimentally affect a reasonable person of the same protected class in Plaintiff's position.

135. The unlawful employment practices outlined above were intentional.

136. Defendant knew or should have known of the sexual harassment.

137.   Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

138. As a result of Defendants' actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

139. The above described acts of Defendants with regard to Plaintiff were egregious and were committed with a malicious, willful, and/or reckless indifference to the statutorily protected rights of Plaintiff.

140. Said acts of Defendant were committed by and through its senior management employee within his employment relationship with Defendant.

141. The extreme and outrageous acts of Defendants merit the imposition of punitive damages.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

142. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

143. Plaintiff engaged in protected activity protected by Title VII when he complained to his

supervisor about the race discrimination and sexual harassment.

144. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

145. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VI – RETALIATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

146. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

147. Plaintiff engaged in activity protected by the PHRA when he complained to his supervisor about the race discrimination and sexual harassment.

148. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

149. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, Semaj Worrell, requests that the Court grant him the following relief against Defendants:

(a)      Compensatory damages;

(b)      Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII and the PHRA.

(j)     Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in,  training  programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: October 11, 2021           **By:**   */s/ David M. Koller*
                                          David M. Koller, Esquire
                                          2043 Locust Street, Suite 1B
                                          Philadelphia, PA 19103
                                          215-545-8917
                                          davidk@kollerlawfirm.com

                                          *Counsel for Plaintiff*